ATTORNEYS FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office
Brooklyn, Indiana

Christopher L. Arrington
Christopher L. Arrington, Attorney at
Law, PC
Danville, Indiana

ATTORNEY FOR APPELLEE

William O. Harrington
Harrington Law, PC
Danville, Indiana



FILED

Jul 20 2017, 8:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# COURT OF APPEALS OF INDIANA

P.S.,

*Appellant-Respondent,*

v.

T.W.,

*Appellee-Petitioner*

July 20, 2017

Court of Appeals Case No.
32A01-1610-PO-2426

Appeal from the Hendricks County
Superior Court

The Honorable Mark Smith, Judge

Trial Court Cause No.
32D04-1607-PO-336

**May, Judge.**

[1] P.S. appeals the trial court's decision to place him on GPS monitoring following his violation of the protective order ("PO") in place to protect T.W. from P.S. P.S. argues GPS monitoring is inappropriate for two reasons: (1) he was not on notice that GPS monitoring was a possible consequence of violating the PO; and (2) the evidence was insufficient to prove he violated the PO. We affirm.

# Facts and Procedural History

[2] P.S. and T.W. are married and in the process of a divorce. They also own a business together. On July 21, 2016, T.W. filed a petition for an order of protection against P.S. and a request for hearing. The trial court granted her petition, issued an *ex parte* PO, and scheduled a hearing on the matter for August 10, 2016. The hearing was continued until September 28, 2016.

[3] At the hearing on September 28, 2016, T.W. testified P.S. abused illegal substances, was unsuccessful in his attempt at substance abuse rehabilitation, had indicated he would commit suicide or kill T.W. if she tried to leave, had thrown a candle at T.W. during an argument, and had locked T.W. in the garage when she threatened to leave him. T.W. testified these actions made her "afraid of him[,]" (Tr. at 14), and she "didn't want him to do anything to [her]." (*Id.*) Based thereon, the trial court issued a PO against P.S., ordering:

> 1. [P.S.] is hereby enjoined from threatening to commit or committing acts of domestic or family violence, stalking, or sex offenses against [T.W.] . . .

2.  [P.S.] is prohibited from harassing, annoying, telephoning, contacting, or directly or indirectly communicating with [T.W.].

3.  [P.S.] shall be excluded from [T.W.'s] residence.

4.  [P.S.] is ordered to stay away from the residence, school, and/or place of employment of [T.W.].

5.  [T.W.] shall have the possession and use of the residence[.]

6.  The Court orders the following additional relief to provide for the safety and welfare of [T.W.]. . . [P.S.] is not to interfere with the mailbox for [Parties' business] located at [sic] Brownsburg.

* * * * *

8.  [P.S.] is prohibited from using or possessing a firearm, ammunition, or deadly weapon.

(Appellant's App. Vol. II at 42-3.)  The PO expires on September 28, 2018.

[4]     On October 12, 2016, T.W. filed an emergency verified motion to show cause and alleged P.S. committed multiple violations of the PO.  On October 16, 2016, the trial court held a hearing on the matter.  At the hearing, T.W. presented evidence P.S. had been "watching [her]," (Tr. at 51), removed equipment from her property without her permission, directed others to remove items from T.W.'s property without her permission, and "hack[ed into her email account] and chang[ed] the password."  (*Id*. at 58.)  The trial court also

received evidence P.S. attempted to communicate with T.W. through a third party in violation of the PO.

[5] Based thereon, the trial court determined P.S. violated the PO. On October 18, 2016, the trial court entered three orders. In the first, the trial court found P.S. in violation of the PO and ordered him to "wear a GPS tracking [device] under I.C. 34-26-5-9(i)." (Appellant's App. Vol. II at 55.) Second, the trial court amended the original PO to include language that stated, "The Court [o]rdered [P.S.] to be hooked up to GPS monitoring per I.C.34-26-5-9(i). Mr. P.S. is ordered to stay away from [T.W.] and at least one (1) mile from the marital residence and any place where she resides." (*Id.* at 53). The trial court also changed the PO's expiration date to October 19, 2018. Finally, the trial court entered an order entitled, "Order for GPS Monitoring" in which it gave specific directions to P.S. about starting GPS monitoring as ordered. (*Id.* at 56.)

# Discussion and Decision

### *Due Process*

[6] P.S. claims "his right to due process was violated because he was never put on notice that a violation of the protective order could subject him to indefinite GPS monitoring at his own expense." (Br. of Appellant at 10.) "Whether a party was denied due process is a question of law that we review *de novo*." *Miller v. Indiana Dept. of Workforce Dev.*, 878 N.E.2d 346, 351 (Ind. Ct. App. 2007). Further, "notice of the issues to be addressed at a hearing is a fundamental requirement of a fair hearing." *Id*.

[7]     P.S. argues the trial court was constrained to order him to pay a fine or to serve time in jail or prison, because the PO stated: "Violation of this order is punishable by confinement in jail, prison and/or a fine." (Appellant's App. Vol. II at 44.) However, Indiana Code § 34-26-5-9(i) (2010)[1] provides the trial court may, upon "finding a violation of an order for protection . . . (1) require a respondent to wear a GPS tracking device; and (2) prohibit the respondent from approaching or entering certain locations where the petitioner may be found." P.S. acknowledges the existence of Indiana Code § 34-26-5-9(i) (2010), but contends "[T.W.] never requested such relief from the court, and P.S. was never given the opportunity to be heard by the court on this matter." (Br. of Appellant at 10.)

[8]     P.S. cites no case law to support his argument the trial court was required to apprise him of all possible penalties for violating the PO. Further, it is well-established "[a]ll persons are charged with the knowledge of the rights and remedies prescribed by statute." *Middleton Motors, Inc. v. Indiana Dept. of State Revenue, Gross Income Tax Div.*, 380 N.E.2d 79, 81, 269 Ind. 282, 285 (1978). As P.S., like every person in Indiana, is charged with knowing the law of the state, we cannot say he lacked notice of the possibility he could be subject to GPS monitoring if he violated the PO. *See, e.g., Tiplick v. State,* 43 N.E.3d 1259, 1263 (Ind. 2015) (person of ordinary intelligence charged with knowing list of

---

[1] Despite the precedent treating a violation of a PO as an action in indirect contempt, *Flash v. Holtsclaw*, 789 N.E.2d 955, 958 (Ind. Ct. App. 2003), *reh'g denied*, *trans. denied*, we note Indiana Code section 34-26-5-9(i) is specific in limiting GPS monitoring to situations involving the violation of a PO only.

prohibited synthetic drugs as prescribed by Pharmacy Board Emergency Rules referenced in the relevant criminal statute); *see also Iterman v. Baker*, 214 Ind. 308, 317, 15 N.E.2d 365, 370 (1938) ("all have an equal opportunity to know the law, and are presumed to know it").

### *Violation*

In *Flash v. Holtsclaw*, we noted our standard of review when considering the trial court's determination a party is in violation of a PO:

Indiana Code section 34-47-3-1 provides as follows:

> A person who is guilty of any willful disobedience of any process, or any order lawfully issued:
>
> > (1) by any court of record, or by the proper officer of the court;
> >
> > (2) under the authority of law, or the direction of the court; and
> >
> > (3) after the process or order has been served upon the person;
>
> is guilty of an indirect contempt of the court that issued the process or order.

Indirect contempt proceedings require due process protections, including notice and the opportunity to be heard. *Carter v. Johnson*, 745 N.E.2d 237, 241 (Ind. Ct. App. 2001).

Civil contempt is failing to do something that a court in a civil action has ordered to be done for the benefit of an opposing party. *Cowart v. White*, 711 N.E.2d 523, 530 (Ind. 1999). A party who has been injured or damaged by the failure of another to conform to a court order may seek a finding of contempt. *Id.* Whether a party is in contempt is a matter left to the discretion of the trial court. *Id.* We reverse a trial court's finding of contempt only if there is no evidence or inferences drawn therefrom that support it. *Id.*

789 N.E.2d 955, 958 (Ind. Ct. App. 2003), *reh'g denied*, *trans. denied*.

Here, the trial court found P.S. violated the PO after T.W. presented evidence P.S. violated the PO by removing items from the marital property without her permission and contacting her through a third party, among other possible violations. P.S. argues "the trial court failed to issue specific written findings explaining how P.S. violated the protective order," (Br. of Appellant at 11), and thus "it appears that the court's determination that P.S. violated the protective order was based on a finding that P.S. entered the property and removed several items." (*Id.*) Therefore, P.S. contends, T.W. did not present sufficient evidence he violated the PO because he claims he did not enter the property and instead "directed a third party to remove equipment from an outbuilding on the property." (*Id.* at 14.) P.S.'s argument ignores the other evidence presented at trial concerning other violations of the PO, such as P.S.'s attempt to communicate with T.W. via her sister-in-law and the fact P.S. changed T.W.'s email password.

P.S.'s argument is essentially a request that we judge T.W.'s credibility, which we cannot do. *See Flash*, 789 N.E.2d 959-60 (appellate court defers to trial court's determination of witness credibility). T.W. presented evidence P.S. removed equipment from the marital property without her consent, changed her email password, and attempted to contact her through her sister-in-law. T.W. testified P.S.'s actions, including sitting in his vehicle across from her property, made her feel "very harassed." (Tr. at 63.) T.W. presented sufficient evidence P.S. violated the terms of the PO, and the trial court did not abuse its discretion when so concluding. *See, e.g., Smith v. State*, 999 N.E.2d 914, 916 (Ind. Ct. App. 2013) (Smith violated protective order when he entered protected person's house without her consent to remove property), *trans. denied*; *see also, e.g., Kelly v. State*, 13 N.E.3d 902 (Ind. Ct. App. 2014) (Kelly violated protective order when he sent a message to the protected person through a third party).

# Conclusion

P.S. had notice he could be placed on GPS monitoring if he violated the PO and T.W. presented sufficient evidence he violated the PO. Thus, the trial court did not abuse its discretion in concluding P.S. violated the PO and it did not err when it ordered him to submit to GPS monitoring as a penalty for that violation. Accordingly, we affirm.

Affirmed.

Brown, J., and Pyle, J., concur.